UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEMI AGUIRRE, IRMA ALVAREZ, ROGELIO ALVAREZ, VICTORIA ALVAREZ, ALICIA CUELLA, individuals,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY, a corporation; CHRISTINA ACOSTA, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | No. 1:25-cv-00265-KES-CDB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>(Doc. 7) |

Plaintiffs Noemi Aguirre, Irma Alvarez, Rogelio Alvarez, Victoria Alvarez, and Alicia Cuella filed a motion to remand this action to the Superior Court of the State of California for the County of Madera, following defendant Nationwide Mutual Insurance Company's notice of removal to federal court. Doc. 1 ("Notice of Removal"); Doc. 7. The parties dispute whether the amount in controversy is satisfied because the only concrete amount stated in plaintiffs' complaint is a $29,500 appraisal cost. The parties' briefs have been considered and, for the reasons explained below, plaintiffs' motion to remand is granted.

///

1

## I. Background

Plaintiffs filed this action against defendants Nationwide Mutual Insurance Company ("Nationwide") and Christina Acosta in Madera County Superior Court on May 23, 2024. Notice of Removal, Ex. A ("Compl."). Plaintiffs bring claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Nationwide.[1] Compl. ¶¶ 19–25. Plaintiffs Noemi Aguirre and Irma Alvarez were named as insured parties under a home insurance policy from Nationwide which insured risks of loss at their property in Madera, California. Compl. ¶ 4. Other plaintiffs are insured under the policy as immediate family members of the named insured parties. *Id.*

The complaint alleges that on or about May 25, 2022, while the policy was in effect, plaintiffs' home sustained physical damage from a fire at a neighboring property. Compl. ¶ 8. Plaintiffs allegedly gave Nationwide notice of the loss and fulfilled all conditions set forth in the policy and under applicable California law. Compl. ¶ 9. The complaint states that Nationwide assigned an unqualified and unlicensed adjuster to inspect the property. Compl. ¶ 10. The adjuster created a scope of repair and estimate of damage for repair of the property in the approximate amount of $17,000 Actual Cash Value ("ACV"). Compl. ¶ 12. Plaintiffs allege that Nationwide "failed to account for the true [] damage to the [p]roperty, failed to conduct a thorough or objective investigation, and intentionally restricted the identified scope of damage." Compl. ¶ 11. As a result, plaintiffs requested an appraisal, and a panel found that the cost of the building repairs was $120,521.30 ACV and $129,861.40 Replacement Cost Value. Compl. ¶¶ 13, 16; Compl., Ex. A. Plaintiff Irma Alvarez spent approximately $29,500 on this appraisal. *Id.*

In the complaint, plaintiffs also allege that Nationwide "failed to make full payment of policy benefits, including but not limited to personal property and Covid protocol, which was not included in the appraisal," that Nationwide "still owes for the depreciation and code upgrades,

---

[1] The complaint also contains a claim for negligence again Christina Acosta. Compl ¶ 26–36. However, on February 25, 2025, the Madera County Superior Court approved a stipulation by the parties to sever plaintiffs' causes of action against Nationwide from the claim against Ms. Acosta. Notice of Removal ¶¶ 4–5. The claim against Ms. Acosta was no longer part of this case when Nationwide filed the notice of removal.

2

1  among other items," and that plaintiffs "incurred out-of-pocket loss for continuing to pay rent"

2  after Nationwide stopped making payments for loss of use. Compl. ¶¶ 17–18.

3     On March 3, 2025, Nationwide filed a notice of removal based on diversity jurisdiction,

4  asserting that the parties are diverse and the amount in controversy exceeds the jurisdictional

5  minimum of $75,000. Notice of Removal ¶ 17. The Notice of Removal states that plaintiffs are

6  citizens and residents of California and Nationwide is an Ohio corporation with its principal place

7  of business in Ohio. *Id.* ¶¶ 9–11. The Notice of Removal further states that the amount in

8  controversy is met because plaintiffs seek general, special, and consequential damages,

9  prejudgment interest, costs of the insurance appraisal and suit, attorney's fees, punitive damages,

10 treble damages, and "out-of-pocket" losses based on their payment of rent while the repairs were

11 being completed. *Id.* ¶¶ 14–16.

12    Plaintiffs filed a motion to remand on April 2, 2025, asserting that the Court cannot

13 exercise diversity jurisdiction over this matter because the amount in controversy is not met.

14 Doc. 7 at 2. Specifically, plaintiffs contend that only $29,500 is in dispute, consisting of the

15 appraisal costs as ascertained at the time of removal, so the amount in controversy is less than the

16 jurisdictional minimum. *Id.* at 2. Nationwide filed an opposition to the motion to remand,

17 Doc. 12, to which plaintiffs filed a reply, Doc. 13.

18 **II.    Legal Standard**

19    **A.    Removal Jurisdiction**

20    A suit filed in state court may be removed to federal court if the federal court would have

21 had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case

22 originally filed in state court presents a federal question or where there is diversity of citizenship

23 among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C.

24 §§ 1331, 1332(a).

25    "If at any time before final judgment it appears that the district court lacks subject matter

26 jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Section 1447(c) "is strictly

27 construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to

28 the party invoking the statute." *Acad. Of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061

1  (9th Cir. 2021) (quoting *Calif. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004));

2  *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir.

3  2009) ("The defendant bears the burden of establishing that removal is proper."). As such, a

4  federal court must reject jurisdiction and remand the case to state court if there is any doubt as to

5  the right of removal. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.

6  2003).

7        **B.**     **Diversity Jurisdiction**

8      A court may exercise diversity jurisdiction over a matter when there is diversity of

9  citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C.

10  § 1332(a). A notice of removal must include "a plausible allegation that the amount in

11  controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*,

12  574 U.S. 81, 89 (2014). When a plaintiff contests removal jurisdiction, and the dollar amount in

13  controversy is not evident in the complaint, the removing party must demonstrate, by a

14  preponderance of the evidence, that the amount in controversy exceeds the jurisdictional

15  threshold. *Id.* at 88; *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020)

16  (citation omitted).

17      The amount in controversy is calculated based upon "the complaint operative at the time

18  of removal and encompasses all relief a court may grant on that complaint if the plaintiff is

19  victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018). "The

20  amount in controversy is simply an estimate of the total amount in dispute, not a prospective

21  assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th

22  Cir. 2010) (citation omitted). Although courts begin their inquiry by looking at the complaint,

23  "the amount-in-controversy inquiry in the removal context is not confined to the face of the

24  complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (citations omitted).

25  The court may consider allegations in the removal petition, "summary-judgment-type evidence

26  relevant to the amount in controversy," and evidence filed in opposition to the motion to remand.

27  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citation omitted); *see also Lenau v.*

28  *Bank of Am., N.A.*, 131 F. Supp. 3d 1003, 1005 (E.D. Cal. 2015) (citing *Cohn v. Petsmart, Inc.*,

281 F.3d 837, 840 n.1 (9th Cir. 2002) (per curiam)).  Courts may also consider jury verdicts in cases with analogous facts to determine the amount in controversy.  *Kroske*, 432 F.3d at 980; *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

### III. Discussion and Analysis

Plaintiffs move to remand on the ground that the amount in controversy does not meet the $75,000 jurisdictional requirement.  *See* Doc. 7.  The parties agree that the amount in controversy includes alleged appraisal costs of $29,500.  *See* Doc. 13 at 2.  Thus, to satisfy the jurisdictional requirement, Nationwide must demonstrate that at least an additional $45,500 is at issue based on plaintiffs' requests for other damages and attorney's fees.

#### A. Attorney's Fees

The parties dispute the availability of attorney's fees.  When an insurer withholds benefits in bad faith, attorney's fees reasonably incurred to compel payment of the policy benefits are recoverable as an element of the damages resulting from such tortious conduct.  *Brandt v. Superior Ct.*, 37 Cal.3d 813, 815.  Contrary to plaintiffs' assertion that only fees incurred at the time of removal count, the amount of attorney's fees accrued throughout the entirety of the litigation are relevant.  *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) (rejecting plaintiff's argument that attorneys' fees are limited to those accrued at time of removal).

Although attorneys' fees awarded in "bad faith" cases can be substantial, *see, e.g., Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1203 (2009) (awarding $189,000 in attorneys' fees for bad faith suit involving homeowner's policy on fire-destroyed home), Nationwide has failed to provide a reasonable estimate of what the attorney's fees might be in this case.  The record does not contain plaintiffs' attorney's hourly rate or a reasonable estimate of expected attorney hours.  Courts routinely reject prospective fees without a reasonable estimate of both the number of hours plaintiffs' counsel might work and the billed rate for those hours.  *See Fritsch*, 889 F.3d at 795 ("[W]e are confident that district courts are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate

1  is too speculative because of the likelihood of a prompt settlement. . . . A district court may reject
2  the defendant's attempts to include future attorneys' fees in the amount in controversy if the
3  defendant fails to satisfy this burden of proof."); *Conrad Assocs. v. Hartford Acc. & Indem. Co.*,
4  994 F. Supp. 1196, 1200 (N.D. Cal 1998) ("Defendant's contention that attorney fees are likely to
5  total at least $20,000 is too speculative . . . . [D]efendant simply asserts that it will take eighty
6  hours to bring this case to the summary judgment stage without providing any factual information
7  of how it arrived at this figure."); *see also Owuor v. Wal-Mart Assocs., Inc.*, No. 2:21-cv-02232-
8  KJM-JDP, 2022 WL 1658738, at *6–7 (E.D. Cal. May 25, 2022).  Here, Nationwide has not
9  offered any estimate of the number of attorney hours or the applicable billing rate.  *See* Doc. 12 at
10  13.

11  Instead, Nationwide argues that plaintiffs "cannot seriously contend that their alleged
12  attorney's fees in prosecuting the action through trial would not exceed" the remaining
13  jurisdictional amount.  *Id.*  This is insufficient because a "defendant cannot establish removal
14  jurisdiction by mere speculation and conjecture . . . ." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d
15  1193, 1197 (9th Cir. 2015).  Therefore, Nationwide fails to present any basis for the Court to
16  consider potential attorney's fees in calculating the amount in controversy.

17  **B.      Punitive Damages**

18  Plaintiffs seek punitive damages in their complaint.  Compl., Prayer ¶ 5.  Under California
19  law, punitive damages are recoverable against an insurance company that breaches the implied
20  covenant of good faith and fair dealing if the defendant is "guilty of oppression, fraud, or malice,"
21  Cal. Civ. Code § 3294, and "acts with the intent to vex, injure or annoy, or with a conscious
22  disregard of the plaintiff's rights."  *See Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 922–23
23  (1978); *Silberg v. Cal. Life Ins. Co.*, 11 Cal.3d 452, 462–63 (1974).  When the complaint does not
24  assert the amount of punitive damages, "a defendant may introduce evidence of jury verdicts from
25  cases with analogous facts" to establish the probable punitive damages.  *Owuor*, 2022 WL
26  1658738, at *3 (citing *Kroske*, 432 F.3d at 980).  "[T]o serve as benchmarks," such cases need
27  not be "perfectly analogous," but rather, need only be "sufficiently similar."  *See id.*
28  Nationwide offers nine cases—six of which are federal district or state appellate court

orders and three of which are summaries of jury verdicts—which it argues show that high punitive damage awards may be awarded in insurance bad faith cases. *See* Doc. 12 at 15; Doc. 12-1, Exs. A–D. However, most of these cases are far from being "sufficiently similar" to establish probable punitive damages in this case. *See, e.g.*, *Comet Techs USA Inc. v. XP Power LLC*, No. 20-CV-06408, 2023 WL 3565070 (N.D. Cal. Mar. 22, 2023) ($20 million in punitive damages in trade secret misappropriation case); *Tompkins v. Basic Research LL*, No. CIV.S-08-244, 2008 WL 1808316 (E.D. Cal. Apr. 22, 2008) ($2 million in punitive damages in class action arising from the sale and advertising of an allegedly ineffective dietary supplement); *James Dickey, Inc. v. Altera Am. Ins. Co.*, No. 2:15-CV-00963, 2015 WL 4537732 (C.D. Cal. July 27, 2015) (court considered hourly rate of plaintiffs' attorney as well as punitive damages to determine amount in controversy was met); *Winery v. Graham*, No. C-06-3618, 2007 WL 963252 (N.D. Cal. Mar. 29, 2007) (amount in controversy met because punitive damages were likely recoverable if plaintiff prevailed on fraud claim which requires showing of intent to deprive person of property or legal rights); *Bansal v. Nationwide Mut. Ins. Co.*, No. 23-CV-05527-LB, 2024 WL 1343301 (N.D. Cal. Feb. 11, 2024) (amount in controversy met where plaintiffs pleaded $39,325 in appraisal costs and demanded $31,055.06 in "pack-out costs", plus emotional distress and punitive damages).

Only one order cited by defendants arguably comes closer to meeting the "sufficiently similar" standard: *Smally v. Nationwide Ins. Co.*, No. A133533, 2014 WL 1350124 (Cal. Ct. App. Apr. 7, 2014). *Smally* has some similarity to the case at hand, as it involved breach of contract and breach of the implied covenant of good faith and fair dealing claims against Nationwide associated with property loss and the withholding of insurance benefits. *Smally*, 2014 WL 1350124, at *3–9.[2] In that case, the defendant insurance company breached the terms of a home insurance policy when it cancelled the policy without notifying the cross-plaintiff mortgage company, then unreasonably withheld benefits owed to the mortgage company by offering it the

---

[2] Federal courts "may consider unpublished state decisions, even though such opinions have no precedential value." *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

7

actual cash value of the home, rather than the fair market value as provided by the policy. *Id.* On appeal, the court upheld a jury's award of punitive damages and explained that the unreasonable delay in notifying the mortgage company and the unreasonable denial of benefits justified an award of punitive damages. *Id.* at *13. The court also explained that the jury had evidence of Nationwide's net worth and that Nationwide had engaged in this same conduct in over ten other cases in the prior four years. *Id.* Here, in contrast, plaintiffs do not allege that Nationwide failed to inform them of a cancellation or refused to pay the appraisal award; rather, they allege that Nationwide failed to pay the costs of the appraisal. Additionally, plaintiffs have not alleged or presented evidence of Nationwide's net worth. The considerations justifying punitive damages in *Smally* are mostly absent from plaintiffs' complaint and *Smally* is not sufficiently similar to the present case.

Three of the cases presented by Nationwide were jury verdicts rendered in bad faith lawsuits in California trial courts following the destruction of insured properties by fire. *See* Doc. 12-1, Exs. A–C. These verdicts demonstrate that juries have awarded plaintiffs as much as $15,000,000 in punitive damages in cases involving appraisal costs in the tens of thousands of dollars. *Id.*[3] However, as plaintiffs point out in their reply, the facts of these cases are likely not sufficiently similar to the present case. Doc. 13 at 4. *Katayama International Inc. v. Mayatek Corp.*, for example, involved large-scale commercial property losses, including $1,934,182 for loss of sale value and $598,587 for loss of rent. No. 98AS00946, 2002 WL 1793653 (Cal. Super. Ct. Apr. 11, 2002). Additionally, *Katayama* settled before the punitive damages phase, making it unhelpful for deciding whether punitive damages alone could satisfy the amount in controversy requirement. *Id. Kasparian v. Fremont Indemnity Co.* is also unhelpful as it involved large-scale commercial property losses and a significant delay in policy payments which caused the plaintiff to lose its business, rather than a refusal by an insurance company to pay appraisal costs, as is the case here. No. C-532896, 1989 WL 1179647 (Cal. Super. Ct. June 16, 1989).

The only arguably analogous jury verdict that Nationwide provides is *Schmid v. Federal*

---

[3] All three of these cases included at Doc 12-1, Exhibit B, were summaries of jury verdicts and did not include an opinion explaining precisely why punitive damages were awarded.

*Insurance Co.*, in which the insured "plaintiffs alleged that [the] defendant [insurance company] deliberately failed to properly investigate the loss and purposely forced the issue of appraisal, hoping to get a lowball award . . . ." No. 686651, 1996 WL 268592 (Cal. Super. Ct. Apr. 1, 1996). The jury returned a verdict for the plaintiff in the amount of $17,062,000, consisting of $62,000 for appraisal and storage fees, $1,000,000 for compensatory damages to each insured party, and $15,000,000 for punitive damages, plus attorney's fees and interest. *Id.* Like the plaintiffs in *Schmid*, plaintiffs seek appraisal costs less than the $75,000 jurisdictional minimum, but also request punitive damages based on an insurance company's alleged bad faith in failing to properly assess their property loss. *Id.* However, in *Schmid*, the defendant insurance company did not pay the full appraisal award, only the basic policy limit, which was $500,000 less than the appraisal award. *Id.* Additionally, "[t]he appraisal process was lengthy, suffered delays and cost plaintiffs nearly $60,000," more than double the appraisal costs in question in the present case. *Id.* The plaintiffs in *Schmid* also incurred $2 million in compensatory damages. At any rate, even if *Schmid* bears some similarity to the present case, this limited example is not enough to show by a preponderance of the evidence that plaintiffs here will likely recover punitive damages. Therefore, defendant has not met its burden to establish probable punitive damages.

In addition to punitive damages, plaintiffs Rogelio and Victoria Alvarez seek treble damages under California Civil Code § 3345, which allows the trier of fact to treble an award of punitive damages if it finds that the defendant "knew or should have known that their conduct was directed to one or more senior citizens . . . ." Cal. Civ. Code § 3345(b); *see Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061, 1067 (C.D. Cal. 2008) (explaining that common law punitive damages may be trebled under this statute). These trebled damages can be included for the purpose of calculating the amount in controversy. *See Diaz v. Pa. Life Ins. Co.*, No. 2:17-CV-07811, 2018 WL 671161, at *1 (C.D. Cal. Jan. 31, 2018) (considering plaintiff's request for "an award of punitive damages and treble punitive damages" in determining amount in controversy exceeded $75,000). Here, however, since defendant has failed to show that it is more likely than not that plaintiffs are entitled to any punitive damages, it is also not appropriate to consider

1  plaintiffs' request for treble damages in calculating the amount in controversy.

### C. Other Requests for Damages

In their complaint, plaintiffs allege that they "incurred out-of-pocket loss for continuing to pay the rent as a result" of Nationwide stopping payments to plaintiffs for loss of use of their home. Compl. ¶ 18. However, Nationwide does not show what a reasonable amount might be for plaintiffs' "out-of-pocket losses" for rent. Doc. 12 at 7. Nationwide also argues that emotional distress damages are at issue, but the complaint does not make a request for emotional distress damages. *See* Compl.

Lastly, the parties dispute whether depreciation is at issue. According to Nationwide, the depreciation amounts to $9,340. Doc. 12 at 7. However, even if this is true, it is of no avail to Nationwide because the amount in controversy would still be far below the jurisdictional minimum with only the $29,500 appraisal costs and $9,340 for depreciation.

### IV. Conclusion and Order

Nationwide has failed to meet its burden to show that the amount in controversy is met in this case, so this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332.

Accordingly, the Court ORDERS:

1. Plaintiffs' motion to remand, Doc. 7, is **GRANTED**;
2. This action is **REMANDED** to the Superior Court of the State of California for the County of Madera for lack of subject matter jurisdiction;
3. The Clerk of Court shall mail a copy of this order to the clerk of the Superior Court of the State of California for the County of Madera; and
4. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   June 17, 2025

UNITED STATES DISTRICT JUDGE

10